Law Offices of
Barton Atkinson & Murdoch, P.C.
70 N. Center, Ste. 2
P.O. Box 100
Rexburg, ID  83440
Breck Barton, Idaho State Bar #2006
Steven Atkinson, Idaho State Bar #10047
Marcia Murdoch, Idaho State Bar #8198
(208) 356-4880
icourts@bamattorneys.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTIAN SCIMEMI,<br><br>      Plaintiff<br><br><br>      v.<br><br><br>THE BOARD OF TRUSTEES OF THE<br>COLLEGE OF EASTERN IDAHO, MARY<br>TAYLOR; ROBERT ODENTHAL II, JOHN<br>DOES I-V.<br><br>      Defendant | Case No.: 4:26-cv-375<br><br><br>COMPLAINT<br><br><br>Jury Trial Demanded |

COMES NOW Plaintiff, Christian Scimemi, by and through Steven A. Atkinson of Barton Atkinson & Murdoch, P.C., and hereby complains and alleges as follows.

**PARTIES**

COMPLAINT

1

1. Plaintiff Christian Scimemi is a resident of Idaho who at all times pertinent hereto resided in the County of Bonneville.

2. Defendant Board of Regents of the College of Eastern Idaho (hereinafter "College of Eastern Idaho") is a community college political subdivision of the State of Idaho with a principal place of business in Idaho.

3. Defendant Mary Taylor is an individual who at all times relevant was a resident of the state of Idaho.

4. Defendant Robert H. Odenthal II is an individual who at all time relevant was a resident of the State of Idaho.

5. Defendants John Does I through V are individuals whose identities are currently unknown to Plaintiff but who were employees or agents of College of Eastern Idaho at all times relevant to this Complaint and are or were residents of the state of Idaho.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331 and USCS Const. Art. III, § 2, Cl 1, as this action arises under the Constitution and laws of the United States, specifically and.

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 USCS § 1367, as they form part of the same case or controversy as the federal claims.

8. This Court has personal jurisdiction over College of Eastern Idaho because it is a political subdivision of the State of Idaho with its principal place of business in Idaho.

9. This Court has personal jurisdiction over Mary Taylor as she is a resident of the State of Idaho and at all times pertinent hereto was an employee and agent of the College of Eastern Idaho.

COMPLAINT

10. This Court has personal jurisdiction over Robert H. Odenthal II he is a resident of the State of Idaho and at all times pertinent hereto was an employee and agent of the College of Eastern Idaho.

11. This Court has personal jurisdiction over John Does I through V each is a resident of the State of Idaho and at all times pertinent hereto was an employee and agent of the College of Eastern Idaho.

12. Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in the District of Idaho.

### STATEMENT OF FACTS

13. Christian Scimemi was employed by College of Eastern Idaho as an Information Technology employee from August 9, 2021, until November 8, 2024.

14. Scimemi held the position of Enterprise Resource Planning (ERP) Analyst and was responsible for administration of the Colleague student information system and other critical IT functions.

15. Prior to his termination, Scimemi received a promotion to a lead position within the IT Department.

16. The promotion created a property interest in continued employment.

17. Scimemi had an exemplary employment record, was well-liked by colleagues and supervisors, and had no history of disciplinary issues.

18. Scimemi had a spotless criminal record and was known on campus as polite, professional, and helpful.

19. On November 5, 2024, Defendant Mary Taylor, Vice President of Human Resources at College of Eastern Idaho, received a report from an employee alleging that Scimemi had made verbal threats of violence.

COMPLAINT

20. The report alleged that over the past seven months, Scimemi had made comments about carrying a gun, accessing people's addresses through his IT access, and wanting to shoot people.

21. The alleged statements were jokes or casual remarks common in the IT Department workplace culture and were not intended as, nor understood by most colleagues to be, genuine threats.

22. Multiple IT Department employees, including Kent Blacker, Tyler Hernandez, Austin Lords, and Kegan Brubaker, routinely made similar jokes about workplace violence, firearms, and related topics.

23. On November 6, 2024, Kent Blacker, Tyler Hernandez, Austin Lords, and Kegan Brubaker joked openly in the IT Department common area about Scimemi being fired and needing to work from home for several weeks because Scimemi would return to commit violence against them.

24. The fact that these employees were joking and laughing about the situation demonstrates they did not perceive Scimemi as a genuine threat.

25. Defendant Taylor conducted a limited investigation, interviewing only two or three employees.

26. Defendant Taylor failed to interview Scimemi's direct reports, Michael Darrington and Hunter Tarkalson, who worked closely with Scimemi daily.

27. Defendant Taylor failed to interview Scimemi's direct supervisor, Ray Michel, or his supervisor's supervisor, Steve Brown.

28. Defendant Taylor failed to interview other IT Department employees who could have provided context regarding the workplace culture and the nature of the alleged statements.

29. Defendant Taylor failed to give Scimemi notice of the specific allegations against him or an opportunity to respond before making the termination decision.

COMPLAINT

4

30. On November 7, 2024, Defendant Taylor held a meeting with Scimemi and other IT Department employees ostensibly to address interpersonal workplace issues.

31. The meeting focused primarily on criticizing Scimemi and threatening the jobs of those present.

32. The meeting did not address the specific allegations of threats of violence that would lead to Scimemi's termination the following day.

33. Defendant Taylor willingly interacted with Scimemi during the November 7, 2024 meeting, demonstrating that she did not believe he posed an imminent danger.

34. On November 8, 2024, Defendants terminated Scimemi's employment.

35. The termination occurred in the presence of Defendant Mary Taylor, Defendant Robert H. Odenthal II (Director of Campus Safety), an Idaho Falls Police Detective, and an Idaho Falls Police Officer.

36. The presence of multiple law enforcement officers was unnecessary and intended to humiliate Scimemi, as he is 5 feet 9 inches tall, weighs 150 pounds, has no criminal record, and has no history of violent behavior.

37. Official documentation prepared by Defendants stated that Scimemi would have a violent reaction once terminated, despite the lack of any factual basis for this assertion.

38. There was an intention to walk Scimemi out of the building in handcuffs.

39. Scimemi remained cordial and professional throughout the termination process and displayed no aggressive or hostile behavior.

40. Scimemi was not provided a pre-termination hearing or any opportunity to respond to the allegations before the termination decision was made.

41. Scimemi was not provided a post-termination hearing or any opportunity to challenge the allegations or the termination decision.

COMPLAINT

42. Several hours after Scimemi's termination, on November 8, 2024, Defendant Robert H. Odenthal II published a campus-wide email titled "Campus Timely Warning."

43. The email identified Christian Scimemi by full name.

44. The email stated that Scimemi had been "dismissed and trespassed from campus" based on "Threats of Violence."

45. The email stated: "Based on statements made by an employee he has been dismissed from his position and trespassed from campus. No individuals were targeted in any statements made. If the individual is seen on campus please call 911 and Campus Safety."

46. The email further stated: "Be alert and report it if you see him on campus."

47. The email was distributed to all or nearly all College of Eastern Idaho students, faculty, staff, administration, and cafeteria vendors.

48. The email was received by hundreds of individuals in the Idaho Falls community.

49. Defendant Odenthal knew or should have known that the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act) did not require him to identify Scimemi by name in the Timely Warning.

50. Defendant Odenthal knew or should have known that "threats of violence" are not offenses required to be reported under the Clery Act.

51. Defendant Mary Taylor provided false information to Defendant Odenthal, stating that Scimemi presented an "imminent danger to College of Eastern Idaho employees and students."

52. Defendant Taylor knew or should have known this information was false because she willingly interacted with Scimemi after beginning her investigation, demonstrating she did not believe he posed an imminent danger.

COMPLAINT

6

53. Defendant Taylor knew or should have known the information was false because she failed to conduct a thorough investigation and failed to give Scimemi an opportunity to explain the context of his remarks.

54. John Does I through V made false statements to Defendant Taylor that Scimemi wanted to shoot people on campus.

55. John Does I through V knew or should have known these statements were false or would be taken out of context.

56. John Does I through V made these statements with the intention of interfering with Scimemi's employment contract with College of Eastern Idaho.

57. The statements made by Defendants were false.

58. Scimemi did not make genuine threats of violence.

59. Scimemi did not pose a danger to College of Eastern Idaho employees or students.

60. No criminal charges have been filed against Scimemi by the State of Idaho or any other jurisdiction.

61. College of Eastern Idaho filed an Emergency Petition for Ex Parte Temporary Protection Order against Scimemi on November 8, 2024, in Bonneville County Case No. CV10-24-6061.

62. The petition contained false and misleading statements about Scimemi.

63. On November 18, 2024, the parties agreed to allow the temporary protection order to expire without renewal.

64. As a result of Defendants' conduct, Scimemi's reputation in the community has been irreparably harmed.

65. Students, faculty, and staff now avoid Scimemi when they see him outside of campus.

COMPLAINT

66. Scimemi has been unable to find employment in his chosen field of information technology and database administration since his termination.

67. Potential employers have become aware of the Timely Warning and the allegations, causing them to decline to hire Scimemi.

68. Scimemi has suffered severe emotional distress as a result of Defendants' conduct.

69. Scimemi has required professional treatment for the emotional distress caused by Defendants' conduct.

70. The emotional distress is ongoing and continues to affect Scimemi's daily life, mental health, and ability to function.

71. Scimemi has suffered economic losses including lost wages, lost benefits, and lost earning capacity.

72. Returning to College of Eastern Idaho campus would leave Scimemi vulnerable to physical harm, unlawful detainment, or even potentially death if shot by an uninformed citizen carrying a concealed weapon who believed Scimemi was a threat based on the Timely Warning.

73. At all times relevant to this Complaint, Defendants Mary Taylor, Robert H. Odenthal II, and John Does I through V were acting under color of state law as employees or agents of College of Eastern Idaho, a political subdivision of the State of Idaho.

## CLAIMS FOR RELIEF

**Count I - Deprivation of Property Without Due Process of Law in Violation of 42 USCS § 1983 (against all defendants)**

74. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 73 as if fully set forth herein.

75. Defendants acted under color of state law.

COMPLAINT

76. College of Eastern Idaho is a political subdivision of the State of Idaho and is therefore a state actor subject to the constraints of the Fourteenth Amendment.

77. Defendants Mary Taylor, Robert H. Odenthal II, and John Does I through V were employees or agents of College of Eastern Idaho acting in their official capacities and were therefore acting under color of state law.

78. Plaintiff had a property interest in continued employment.

79. Plaintiff was employed by College of Eastern Idaho from August 9, 2021, until November 8, 2024.

80. Plaintiff received a promotion to a lead position within the IT Department, creating a legitimate claim of entitlement to continued employment.

81. The promotion occurred mere months before Plaintiff's termination, and at the time of the hiring, the Plaintiff's supervisor Ray Michel and the Chief Information Officer Steven Brown were excited with the promotion and explained to Plaintiff their long-term plans for him and the department. Plaintiff accepted the promotion with the reasonable understanding and expectation that he would be able to have a long and fruitful career with the College of Eastern Idaho.

82. Defendants deprived Plaintiff of his property interest in continued employment without due process of law.

83. Defendants terminated Plaintiff's employment on November 8, 2024.

84. Defendants failed to provide Plaintiff with notice of the specific allegations against him prior to termination.

85. Defendants failed to provide Plaintiff with an opportunity to respond to the allegations prior to termination.

86. Defendants failed to provide Plaintiff with a pre-termination hearing.

87. Defendants failed to provide Plaintiff with a post-termination hearing.

COMPLAINT

88. The lack of notice and opportunity to be heard violated Plaintiff's right to due process under the Fourteenth Amendment.

89. Defendants' conduct was the proximate cause of Plaintiff's damages.

90. As a direct result of Defendants' deprivation of Plaintiff's property interest without due process, Plaintiff has suffered damages including lost wages, lost benefits, damage to reputation, emotional distress, and other economic and non-economic losses.

## Count II - Defamation and Defamation Per Se

(against defendants College of Eastern Idaho, Mary Taylor, Robert H. Odenthal II, and John Does I-V)

91. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 90 as if fully set forth herein.

92. Defendants made false statements of fact concerning Plaintiff.

93. On November 8, 2024, Defendant Robert H. Odenthal II published a campus-wide email stating that Plaintiff had been "dismissed and trespassed from campus" based on "Threats of Violence."

94. Defendant Mary Taylor made false statements to Defendant Odenthal that Plaintiff presented an "imminent danger to College of Eastern Idaho employees and students."

95. John Does I through V made false statements to Defendant Taylor that Plaintiff wanted to shoot people on campus.

96. These statements were false.

97. Plaintiff did not make genuine threats of violence.

98. Plaintiff did not pose a danger to College of Eastern Idaho employees or students.

COMPLAINT

10

99. The alleged "threats" were jokes or casual remarks common in the IT Department workplace culture and were not intended as, nor understood by most colleagues to be, genuine threats.

100. Multiple IT Department employees routinely made similar jokes, demonstrating the workplace culture and context.

101. No criminal charges have been filed against Plaintiff, confirming the falsity of the allegations.

102. Defendants published the false statements to third parties.

103. Defendant Odenthal published the Timely Warning email to all or nearly all College of Eastern Idaho students, faculty, staff, administration, and cafeteria vendors.

104. The email was received by hundreds of individuals in the Idaho Falls community.

105. Defendant Taylor communicated false information to Defendant Odenthal and other members of the Campus Safety Department, who then republished the information.

106. John Does I through V communicated false information to Defendant Taylor, knowing or having reason to know it would be republished.

107. Defendants acted with fault in making and publishing the false statements.

108. Defendants knew the statements were false or acted with reckless disregard for the truth.

109. Defendant Taylor failed to conduct a thorough investigation, interviewing only two or three employees and failing to interview key witnesses who could have provided context.

110. Defendant Taylor failed to give Plaintiff an opportunity to explain the context of his remarks before concluding he posed a threat.

111. Defendant Taylor willingly interacted with Plaintiff after beginning her investigation, demonstrating she did not believe he posed an imminent danger, yet she represented to others that he did.

COMPLAINT

11

112. Defendant Odenthal published the Timely Warning without verifying the accuracy of the information or considering whether such a warning was required or appropriate.

113. John Does I through V made statements knowing they were false or would be taken out of context.

114. The false statements have caused Plaintiff damages.

115. The statement that Plaintiff made "Threats of Violence" is defamatory per se.

116. The statement imputes criminal conduct, specifically criminal threats or terroristic threatening.

117. The statement imputes a lack of fitness for Plaintiff's profession and employment.

118. Under Idaho law, statements that are defamatory per se allow for presumed damages without proof of actual harm.

119. Plaintiff is entitled to presumed damages for the defamatory per se statements.

120. In addition to presumed damages, Plaintiff has suffered actual damages.

121. Plaintiff's reputation in the community has been irreparably harmed.

122. Students, faculty, and staff now avoid Plaintiff when they see him outside of campus.

123. Plaintiff has been unable to find employment in his chosen field since the publication of the defamatory statements.

124. Potential employers have become aware of the statements and have declined to hire Plaintiff as a result.

125. Plaintiff has suffered emotional distress, humiliation, and mental anguish as a result of the defamatory statements.

**Count III - Invasion of Privacy (False Light)**

COMPLAINT

(against defendants College of Eastern Idaho, Mary Taylor, Robert H. Odenthal II, and John Does I-V)

126. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 125 as if fully set forth herein.

127. Defendants gave publicity to matters concerning Plaintiff.

128. On November 8, 2024, Defendant Robert H. Odenthal II published a campus-wide email identifying Plaintiff by full name and stating he had been "dismissed and trespassed from campus" based on "Threats of Violence."

129. The email instructed recipients to call 911 if Plaintiff was seen on campus and to "be alert and report it if you see him on campus."

130. The email was distributed to all or nearly all College of Eastern Idaho students, faculty, staff, administration, and cafeteria vendors, constituting hundreds of individuals.

131. The widespread distribution of the email constitutes publicity as that term is used in false light invasion of privacy law.

132. The publicity placed Plaintiff in a false light before the public.

133. The email portrayed Plaintiff as a dangerous individual who posed a threat of violence to the campus community.

134. The email created the impression that Plaintiff was so dangerous that police intervention was necessary and that anyone who saw him should immediately call 911.

135. This portrayal is false.

136. Plaintiff did not pose a threat of violence to the campus community.

137. Plaintiff did not make genuine threats of violence.

COMPLAINT

13

138. The alleged "threats" were jokes or casual remarks common in the IT Department workplace culture.

139. Plaintiff has no history of violent behavior and has a spotless criminal record.

140. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

141. Being portrayed as a violent threat who requires police intervention and a campus-wide warning to call 911 is highly offensive to a reasonable person.

142. The portrayal was highly offensive to Plaintiff.

143. Defendants acted with knowledge of the falsity or with reckless disregard as to the falsity.

144. Defendant Taylor knew or should have known the information was false because she willingly interacted with Plaintiff after beginning her investigation, demonstrating she did not believe he posed an imminent danger.

145. Defendant Taylor knew or should have known the information was false because she failed to conduct a thorough investigation and failed to give Plaintiff an opportunity to explain the context of his remarks.

146. Defendant Odenthal acted with reckless disregard for the truth by publishing the Timely Warning without verifying the accuracy of the information.

147. John Does I through V knew or had reckless disregard for whether their statements were false or would be taken out of context.

148. As a direct result of being placed in a false light, Plaintiff has suffered severe harm.

149. Plaintiff's reputation in the community has been irreparably harmed.

150. Students, faculty, and staff now avoid Plaintiff when they see him outside of campus.

COMPLAINT

151. Plaintiff has been unable to find employment in his chosen field.

152. Plaintiff has suffered severe emotional distress requiring professional treatment.

153. Plaintiff lives in fear of physical harm from uninformed citizens who believe he is a violent threat based on the false publicity.

**Count IV - Tortious Interference with Contract (against defendants Mary Taylor, Robert H. Odenthal II, and John Does I-V)**

154. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 153 as if fully set forth herein.

155. Plaintiff had a contract with College of Eastern Idaho.

156. Plaintiff was employed by College of Eastern Idaho from August 9, 2021, until November 8, 2024, pursuant to an employment contract.

157. Even if the employment was at-will, it constituted a contract between Plaintiff and College of Eastern Idaho.

158. Defendants had knowledge of the contract.

159. Defendants Mary Taylor, Robert H. Odenthal II, and John Does I through V were employees or agents of College of Eastern Idaho and knew of Plaintiff's employment contract.

160. Defendants intentionally interfered with the contract.

161. John Does I through V made false statements to Defendant Taylor that Plaintiff wanted to shoot people on campus.

162. John Does I through V made these statements with the intention of causing Plaintiff's termination and interfering with his employment contract.

COMPLAINT

163. Defendant Taylor used these false statements as a basis for recommending Plaintiff's termination.

164. Defendant Taylor made false statements to Defendant Odenthal and others that Plaintiff presented an "imminent danger to College of Eastern Idaho employees and students."

165. Defendant Odenthal used this false information as a factor in his decision to publish the Timely Warning to campus students, faculty, and staff.

166. The false statements and actions of Defendants directly caused the termination of Plaintiff's employment contract with College of Eastern Idaho.

167. The interference was not justified.

168. The interference was based on false information, an inadequate investigation, and a failure to give Plaintiff an opportunity to respond to the allegations.

169. Defendants acted with malice or improper motive in interfering with Plaintiff's contract.

170. As a direct result of Defendants' interference, Plaintiff's employment contract was terminated on November 8, 2024.

171. Plaintiff has suffered damages including lost wages, lost benefits, and other economic losses.

172. Defendants also intentionally interfered with Plaintiff's prospective economic advantage.

173. Plaintiff had prospective employment relationships in his chosen field of information technology and database administration.

174. Plaintiff had years of experience in his field and reasonable expectation of obtaining employment with other employers.

175. Defendants had knowledge of Plaintiff's prospective employment relationships.

COMPLAINT

176. Defendants knew or should have known that their publication of the Timely Warning and false allegations would interfere with Plaintiff's ability to obtain future employment.

177. Defendants intentionally interfered with Plaintiff's prospective employment relationships.

178. The publication of the Timely Warning and the false allegations have made it virtually impossible for Plaintiff to find employment in his field.

179. Potential employers have become aware of the Timely Warning and the allegations and have declined to hire Plaintiff as a result.

180. The interference was wrongful.

181. The interference was accomplished through false statements, defamation, and other unlawful conduct.

182. As a direct result of Defendants' interference with his prospective employment relationships, Plaintiff has been unable to find replacement employment.

183. Plaintiff has suffered ongoing economic harm including lost wages and lost earning capacity.

**Count V - Intentional Infliction of Emotional Distress (against all defendants)**

184. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 183 as if fully set forth herein.

185. Defendants engaged in extreme and outrageous conduct.

186. John Does I through V made false statements to Defendant Taylor that Plaintiff wanted to shoot people on campus, knowing these statements were false or would be taken out of context.

187. Defendant Taylor conducted an inadequate investigation, interviewing only two or three employees and failing to interview key witnesses or give Plaintiff an opportunity to respond.

COMPLAINT

188. Defendant Taylor made false statements to Defendant Odenthal and others that Plaintiff presented an "imminent danger to College of Eastern Idaho employees and students," knowing or having reckless disregard for whether this was true.

189. On November 7, 2024, Defendant Taylor held a hostile meeting with Plaintiff in which she focused primarily on criticizing him and threatened the jobs of those present.

190. On November 8, 2024, Defendants terminated Plaintiff in the presence of Defendant Mary Taylor, Defendant Robert H. Odenthal II, an Idaho Falls Police Detective, and an Idaho Falls Police Officer, creating a humiliating and intimidating atmosphere.

191. Official documentation stated that Plaintiff would have a violent reaction once terminated, despite Plaintiff's spotless criminal record and well-established reputation for being well-liked and polite on campus.

192. Several police officers and campus security officers were present for Plaintiff's termination based on this false characterization.

193. There was an intention to walk Plaintiff out of the building in handcuffs, further humiliating him.

194. Several hours after Plaintiff's termination, Defendant Odenthal published a humiliating and defamatory email to all students, staff, faculty, and cafeteria vendors, identifying Plaintiff by full name and alleging he had made "Threats of Violence."

195. The email instructed recipients to call 911 if Plaintiff was seen on campus, portraying him as a dangerous individual.

196. The email was sent to hundreds of individuals in the Idaho Falls community, causing widespread knowledge of the false allegations.

197. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

COMPLAINT

18

198. Falsely branding someone as a violent threat, terminating them in the presence of police, publishing a campus-wide warning to call 911 if they are seen, and causing them to be ostracized by the community is extreme and outrageous conduct.

199. Upon termination, Plaintiff was escorted from campus by Defendant Odenthal. An officer standby was called in and wore full uniform. The Defendant Odenthal escorted the Plaintiff to his place of work in the presence of his colleagues and work associates. Defendant Odenthal took it upon himself to gather the Plaintiff's belongings. At all times, an officer standby from the City of Idaho Falls was present in full uniform creating the inference that Plaintiff was dangerous.

200. Defendants' conduct was intentional or reckless.

201. Defendants intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that their conduct would cause Plaintiff severe emotional distress.

202. Defendants knew or should have known that falsely portraying Plaintiff as a violent threat and publishing this information to hundreds of people would cause severe emotional distress.

203. Defendants knew or should have known that terminating Plaintiff in the presence of multiple law enforcement officers based on false allegations would cause severe emotional distress.

204. Defendants knew or should have known that instructing hundreds of people to call 911 if they saw Plaintiff would cause severe emotional distress.

205. Defendants' conduct caused Plaintiff severe emotional distress.

206. As a direct result of Defendants' conduct, students, faculty, and staff now avoid Plaintiff when they see him outside of campus.

207. Plaintiff's reputation in the community has been irreparably harmed.

COMPLAINT

19

208. Plaintiff has been unable to find employment in his chosen field, causing ongoing economic and emotional harm.

209. Plaintiff lives in fear of physical harm from uninformed citizens who believe he is a violent threat based on Defendants' false statements.

210. Returning to College of Eastern Idaho campus would leave Plaintiff vulnerable to physical harm, unlawful detainment, or even potentially death.

211. Plaintiff has suffered severe emotional distress that is more than mere worry, anxiety, or hurt feelings.

212. Plaintiff has required professional treatment for the emotional distress caused by Defendants' conduct.

213. The emotional distress is ongoing and continues to affect Plaintiff's daily life, mental health, and ability to function.

214. Defendants' conduct was the proximate cause of Plaintiff's severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

1. Compensatory damages against all Defendants for economic losses including lost wages, lost benefits, lost earning capacity, and other economic harm in an amount to be determined at trial.

2. Compensatory damages against all Defendants for non-economic losses including pain and suffering, emotional distress, damage to reputation, humiliation, and loss of enjoyment of life in an amount to be determined at trial.

3. Presumed damages against Defendants College of Eastern Idaho, Mary Taylor, Robert H. Odenthal II, and John Does I-V for defamation per se pursuant to Idaho Code § 6-704.

COMPLAINT

20

4. Punitive damages against Defendants Mary Taylor, Robert H. Odenthal II, and John Does I-V for all claims in an amount sufficient to punish Defendants and deter similar conduct in the future, pursuant to Idaho Code § 6-1604.

5. Back pay from the date of termination (November 8, 2024) to the date of judgment against all Defendants.

6. Front pay for future lost wages against all Defendants in an amount to be determined at trial.

7. Injunctive relief requiring Defendants to retract the Timely Warning, issue a correction to all recipients of the original email, and take other steps to mitigate the harm to Plaintiff's reputation.

8. Reasonable attorney's fees and costs pursuant to 42 USCS § 1988.

9. Pre-judgment interest on all damages from the date of loss to the date of judgment pursuant to Idaho Code § 28-22-104.

10. Post-judgment interest on all damages from the date of judgment until paid pursuant to 28 USCS § 1961.

11. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Jury trial on these allegations is demanded.

**Certification and Closing:** Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

COMPLAINT

21

22

further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: June 4, 2026

_____

Steven Atkinson
Attorney for Plaintiff
Barton Atkinson & Murdoch, P.C.
70 N. Center, Suite 2
PO Box 100
Rexburg, ID 83440
Telephone: (208) 356-4880
Fax: (208) 356-4882
icourts@bamattorneys.com

COMPLAINT